47 F.3d 1172
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Raymond WALKER, III, Defendant-Appellant.
 No. 94-3150.
 United States Court of Appeals, Sixth Circuit.
 Jan. 10, 1995.
 
 Before: MERRITT, Chief Judge, and NELSON and DAUGHTREY, Circuit Judges.
 PER CURIAM.
 
 
 1
 The defendant-appellant, Raymond Walker, III, appeals from his convictions for armed bank robbery, use of a firearm during a crime of violence, and making false statements and furnishing false identification to a federally licensed firearms dealer. Before this court, Walker raises broad-based challenges to the propriety of the multi-count indictment, the sufficiency of the convicting evidence, and the district court's sentencing determinations. We find no reversible error in connection with the issues raised on appeal and affirm.
 
 
 2
 There is no dispute that Walker robbed the Huntington National Bank in Whitehall, Ohio, on August 25, 1992, and escaped with proceeds totalling $2,350. This much he confessed to FBI agents when he turned himself in on August 28, three days after the robbery. Walker insists, however, that he was not armed when he entered the bank and, thus, should not have been convicted of armed robbery and use of a firearm to commit a crime of violence.
 
 
 3
 The evidence in the record shows otherwise. Three of the ten eyewitnesses to the robbery saw a gun in the robber's hand as he left the bank. Although the teller who was the actual victim of the robbery did not see a weapon, she testified that the robber told her he had a gun and said, "I need all of your money, and if you don't give it to me, I will shoot." Almost paralyzed with fear, she apparently did not produce the cash quickly enough to suit the robber, so he heaved himself up onto the counter, reached in, and grabbed bundles of bills from her cash drawer. He then ran out of the bank and fled the scene in a gray Pontiac Grand Am, driven by an accomplice identified only as "Swift."
 
 
 4
 That car had been stolen from the Jack Maxton Used Car Lot five days before the bank robbery. Walker had gone there with his girlfriend, who was interested in buying a car. Walker somehow finagled possession of the keys to the Pontiac and then returned later and took the car. (Walker's story to the FBI was that "Swift" had actually stolen the car.) He attached to it license plates stolen from a different Pontiac Grand Am of the same vintage.
 
 
 5
 After the robbery, Walker and his cohort drove to a pre-arranged "switching point," where they abandoned the Pontiac, leaving a Grendel .380 P-12 handgun inside, and drove off in Walker's blue car, to which were affixed license plates from his girlfriend's automobile.
 
 
 6
 Walker apparently left a warm trail, because law enforcement agents had already identified him as a prime suspect in the Huntington National Bank robbery when he turned himself in three days after the robbery. By that time, the FBI had also discovered that some two weeks before the robbery, Walker had purchased two guns--one of them the Grendel .380 handgun found in the abandoned getaway car--from a registered firearms dealer to whom Walker presented false identification. In filling out the gun registration papers, Walker also falsified the records by indicating that he was not currently under indictment and therefore prohibited from purchasing a weapon. In fact, he was then under a multiple-count felony indictment for various violations of the Ohio state penal code.
 
 
 7
 On the advice of his attorney, Walker negotiated a plea agreement with the government but reneged at the last minute and went to trial. At trial he presented a two-prong defense: first, that he did not have the gun in his possession when he entered the bank and was therefore guilty, at most, of simple bank robbery and, second, that he had committed the robbery under coercion and duress. Concerning the coercion defense, Walker testified that in early August 1992, he had been subjected to a lot of pressure from certain drug dealers to repay money that he owed them from a botched business venture. He also claimed that he had purchased the two guns because he feared for the safety of himself and his family. The jury apparently discredited much of Walker's testimony and convicted him on all three counts.
 
 
 8
 I. Issues Related to the Fraudulent Acquisition of
 
 Firearms
 
 9
 In his first issue on appeal, Walker asserts that the government improperly attempted to amend the indictment returned by the grand jury by introducing copies of state court charges showing that he was under pending indictments at the time he purchased two handguns from a federally licensed dealer. In support of his contention, the defendant asserts that the applicable language of 18 U.S.C. Sec. 922(a)(6) speaks only to use of false identification in the purchase of a firearm. He therefore insists that any attempt to establish that a weapons purchase was improper because the buyer was under a pending felony indictment must allege a violation of 18 U.S.C. Sec. 922(n).
 
 
 10
 It is true that 18 U.S.C. Sec. 922(n) makes it "unlawful for any person who is under indictment for a crime punishable by imprisonment for a term exceeding one year to ... receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce." The provisions of 18 U.S.C. Sec. 922(a)(6), however, explicitly prohibit individuals from making "any false or fictitious oral or written statement" or furnishing or showing "any false, fictitious, or misrepresented identification" in order to deceive a firearms dealer as to the lawfulness of the sale. (Emphasis added.) The plain language of Sec. 922(a)(6), therefore, encompasses a false statement on a purchase application indicating that the buyer is not restricted from purchasing a firearm. Contrary to Walker's position on this issue, the statutory provision is not limited to display of false identification. The facts do not make out an improper amendment to the indictment.
 
 
 11
 Walker also claims he was prejudiced by the government's attempt to introduce the state indictments because one of those pending charges involved an aggravated robbery. At trial, however, the parties stipulated to the existence of a pending indictment at the time of the gun purchase but did not divulge to the jury the nature of the felony charges leveled against Walker in the state proceedings. Consequently, use of the false statement prong of 18 U.S.C. Sec. 922(a)(6) by the government could not have prejudiced the jury in its deliberation of the armed bank robbery charge. Moreover, no prejudice could have resulted from such information in the consideration of the false statement allegation because the defendant himself admitted at trial that he violated that provision by at least using a fraudulent identification to obtain the firearms.
 
 
 12
 In another issue, Walker contends that the charge of armed bank robbery and the charge of providing a false statement or identification to obtain a firearm are so distinct that the district court should have severed the trials of the allegations. The record before this court, however, does not indicate that Walker renewed his motion for severance at the close of evidence. The severance issue has, therefore, been waived for appellate purposes. United States v. Swift, 809 F.2d 320, 323 (6th Cir.1987) ("As a prospective ruling affecting cases tried after January 1, 1987, we hold that a severance motion will be deemed waived if it is not renewed at the end of the evidence.").
 
 
 13
 II. Issues Related to the Charge of Armed Bank Robbery
 
 
 14
 In an issue challenging the propriety of his armed bank robbery conviction, Walker insists that the district court erred in allegedly amending the indictment by charging the jury on the theory of armed bank robbery by assault.
 
 
 15
 In pertinent part, 18 U.S.C. Sec. 2113(d) seeks to punish any individual who, by force, violence, or intimidation takes money from a federally insured bank and, in committing such offense, "assaults any person, or puts in jeopardy the life of any person by the use of a dangerous weapon or device...." (Emphasis added.) Despite the disjunctive nature of the statutory prohibition, the grand jury saw fit in this case to indict Walker for armed bank robbery only as follows:
 
 
 16
 On or about August 25, 1992, in the Southern District of Ohio, RAYMOND WALKER, III, by force, violence and intimidation, did take from the person and presence of a bank teller approximately $2,350.00 in money belonging to and in the care, custody, control, management and possession of the Huntington National Bank, 1129 South Hamilton Road, Whitehall, Ohio, the deposits of which were then insured by the Federal Deposit Insurance Corporation, and in doing so did cause to be put in jeopardy the life of said teller by means and use of a dangerous weapon, that is a firearm.
 
 
 17
 (Emphasis added.) No mention was thus made in the indictment of an additional armed assault on the teller during the robbery. Nevertheless, while instructing the jury on the elements of the crime of armed bank robbery, the district judge included a definition of the term "assaults any person." Walker now asserts that injection of the assault language effectively amended the indictment returned against the defendant and resulted in a conviction based upon a theory of guilt not properly disclosed to the defense prior to trial.
 
 
 18
 This court has recently reiterated that "[w]here a jury instruction is given in the alternative, and any one of the alternative instructions is in error, the verdict must be assumed to have 'rested exclusively on the insufficient ground.' " United States v. Wilkinson, 26 F.3d 623, 625 (6th Cir.1994) (citing Zant v. Stephens, 462 U.S. 862, 881 (1983)). Nevertheless, we have consistently held that a judgment may be reversed on the basis of erroneous jury instructions only if that charge, viewed in its totality, is confusing, misleading, or prejudicial. See, e.g., United States v. Milligan, 17 F.3d 177, 182 (6th Cir.), cert. denied, 115 S.Ct. 211 (1994). Hence, in United States v. Moore, 917 F.2d 215 (6th Cir.1990), cert. denied, 499 U.S. 963 (1991), we affirmed a conviction under 18 U.S.C. Sec. 2114 (prohibiting assault or robbery of a person entrusted with possession of mail, money, or other property of the United States) despite the fact that the district court instructed the jury on the definition of assault, when the defendant was indicted only for robbery by putting in jeopardy the life of an individual by use of a dangerous weapon. In that case, we held:
 
 
 19
 [T]he inclusion of the definition of ["assault" and "threat"] was surplusage inasmuch as the district court did not add assault or threat as elements of the crime in the jury instructions. Here, the jury was required only to convict the defendants of crimes as charged in the indictment and was merely educated on the definitions of other applicable terms. There were no extraneous elements presented to the jury and therefore the district court committed no reversible error.
 
 
 20
 Id. at 228.
 
 
 21
 Similarly, the district judge in this case correctly enumerated the elements of the indicted offense of armed bank robbery for the jurors. No mention was made of "assault" when discussing those "essential elements" that must be proven beyond a reasonable doubt. Subsequently, the district judge did define the term "assault" as used in the armed bank robbery statute, but did not include "assault" as an element of the offense. As in Moore, therefore, the jury was permitted to convict Walker only of the crimes charged in the indictment, and no reversible error was committed in this regard.
 
 
 22
 The defendant also insists that sufficient evidence was not adduced at trial to establish beyond a reasonable doubt his guilt of armed bank robbery and use of a firearm in the commission of a crime of violence. Specifically, he contends that only three of the ten eyewitnesses to the bank robbery testified that Walker was carrying a gun during the crime. The jury, however, as was its prerogative, obviously chose to accredit the testimony of those three eyewitnesses. Moreover, even the witnesses who did not see Walker with a firearm were unable to testify that he definitely did not possess such a weapon during the robbery but, rather, said only that they did not notice a gun, either because of the short period of observation or because they were focusing on other aspects of the situation.
 
 
 23
 In this case, Walker approached a bank teller, stated that he had a gun and would shoot her if she did not comply with his demand for money, and left the bank with $2350 of the bank's money. Although the extremely distraught teller who testified that she was in fear of her life did not see a firearm, three other eyewitnesses stated that Walker did have such a weapon in his hand as he left the bank. Such evidence, viewed in a light most favorable to the prosecution, is sufficient to justify a finding by a rational trier of fact that the defendant is guilty beyond a reasonable doubt of armed bank robbery and use of a firearm in the commission of a crime of violence. Jackson v. Virginia, 443 U.S. 307, 319 (1979).
 
 III. Issues Related to Sentencing
 
 24
 Walker also argues that the district court erred in refusing to group the armed bank robbery conviction with his conviction for making false statements to obtain a firearm when determining his sentence. The court, however, appropriately treated the convictions separately for sentencing purposes. Pursuant to the provisions of U.S.S.G. Sec. 3D1.2, "[a]ll counts involving substantially the same harm shall be grouped together into a single Group." Counts of an indictment involve the same harm when, at a minimum, they involve the same victim, one count embodies conduct that is an offense characteristic of another count, or the offense level is determined by the total amount of loss, harm, or substance involved. Secs. 3D1.2(a)-(d).
 
 
 25
 In this case, the armed bank robbery count and the making false statements count do not harm the same victim. The robbery is obviously directed against the bank, while the crime of making false statements to obtain a firearm harms the licensed firearms dealer and society at large, which must then contend with an armed individual who has fraudulently obtained a dangerous weapon. Furthermore, although the armed bank robbery in this case was committed with a handgun obtained by fraudulent means, such fraudulent procurement is not a specific offense characteristic of armed bank robbery. Finally, the two subject counts do not lend themselves to any aggregation of harm, loss, or amount. Because the armed bank robbery count and the count of the indictment alleging the making of false statements to obtain a firearm do not involve "substantially the same harm," the district court did not err in refusing to group those offenses when sentencing Walker.
 
 
 26
 In a second sentencing issue, the defendant asserts that the district court should have accorded him a three-level reduction in sentence for acceptance of responsibility. Walker argues that such a reduction is merited because he turned himself in to the authorities and admitted to simple bank robbery and to furnishing false identification in order to obtain firearms.
 
 
 27
 A district court's decision to deny a sentence adjustment for acceptance of responsibility is, however, subject to review under the clearly erroneous standard and is accorded great deference. United States v. Zimmer, 14 F.3d 286, 289 (6th Cir.1994). See also U.S.S.G. Sec. 3E1.1, comment. (n. 5). In this case, the district court determined that Walker had not accepted responsibility for his crimes because he "put the Government to its burden at trial by denying the essential factual elements of guilt" and because he "did not provide information relative to his involvement in the offense after his conviction." Denial of the essential factual elements of the defendant's guilt is sufficient, by itself, to justify the district court's decision on this matter. Although the commentary to the sentencing guidelines explains that "[c]onviction by trial ... does not automatically preclude a defendant from consideration for such a reduction," U.S.S.G. Sec. 3E1.1, comment. (n. 2), that commentary further provides that a defendant may not deny essential elements of guilt found by a jury and still claim entitlement to an acceptance of responsibility reduction. Instead, the sentence reduction applies only in rare instances when the defendant insists on exercising the constitutional right to trial. For example, the application notes suggest the reduction may be applied "where a defendant goes to trial to assert and preserve issues that do not relate to factual guilt (e.g., to make a constitutional challenge to a statute or a challenge to the applicability of a statute to his conduct)." U.S.S.G. Sec. 3E1.1, comment. (n. 2). By contrast, in this case, Walker, while admitting some elements of the offenses for which he was convicted, steadfastly denied that he was armed with a dangerous weapon when he robbed the Huntington National Bank. By adhering to that position, the defendant forced the government to prove that essential factual element of guilt. Consequently, the district court did not clearly err in denying Walker a sentence reduction for acceptance of responsibility.
 
 
 28
 In a final issue, the defendant insists that the district court erred in ordering him to pay restitution in the amount of $2350. Walker contends that the court had already determined that he did not possess the financial means to pay a fine in this case; the order of restitution, claims the defendant, is thus necessarily inconsistent with that earlier determination.
 
 
 29
 The two conclusions are not, however, irreconcilable. The restitution amount, while not petty, is also not so great that Walker could not possibly raise those funds during his three years of supervised release after service of his penitentiary sentence. The district court, therefore, did not abuse its discretion in determining that Walker's future earning potential justified the order of restitution. See, e.g., United States v. Milligan, 17 F.3d at 184. Moreover, the table of fines that is reproduced in U.S.S.G. Sec. 5E1.2(c)(3) establishes a fine range of $10,000 to $100,000 for the offenses for which Walker was convicted. Given the amount of such a fine, the district court could, within its discretion, conclude on the facts before it that, while Walker possessed the ability and future earning potential to repay the Huntington National Bank the $2350 he robbed, he still was not financially able to pay even the minimum $10,000 fine applicable to these offenses. While it would have been the better practice for the district court to have explained more fully its reasons for ordering restitution after finding inability to pay a much larger fine, the record reveals that the district court ordered restitution only after considering the presentence report and consulting with the probation officer who prepared it.
 
 
 30
 For the reasons set out above, we AFFIRM the judgment of the district court in all respects.